IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| QUANTA SYSTEMS CORPORATION | : |  |
|  | : |  |
| v. | : | Civil Action No. DKC 2005-1109 |
|  | : |  |
| BAILEY ASAKA SYSTEMS ENGINEERING CORPORATION | : |  |

## MEMORANDUM OPINION

Presently pending and ready for resolution in this breach of contract case is Defendant's motion to dismiss. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court will deny Defendant's motion, but will grant Defendant's request to transfer.

## I.  Background

Unless otherwise stated, the following facts have been alleged by Plaintiff or are uncontroverted. Plaintiff Quanta Systems Corporation ("Quanta") is a corporation organized and existing under the laws of Connecticut with its principal place of business in Gaithersburg, Maryland. Defendant Bailey Asaka Systems Engineering Corporation, commonly known by its acronym "BASE2," ("BASE2") is a corporation organized and existing under the laws of Delaware with its principal place of business in Arlington, Virginia. BASE2 also has an office located in

Newport News, Virginia.   From April 1993 until November 15, 2004, BASE2 maintained a state registration with the Maryland State Department of Assessments and Taxation ("SDAT").  Although BASE2 contends that it removed its registered agent and abandoned its Maryland registration in 2002, SDAT did not officially dissolve BASE2's registration until November 15, 2004.

In 2002, the United States Air Force sought assistance in building a Shoreline Intrusion Detection System ("SIDS") for the Cape Canaveral Spaceport in Florida in order to improve security for that facility.   BASE2 asserts that Norment Security, Inc., a sister corporation of Quanta, contacted BASE2 to determine BASE2's interest in acting as the prime contractor on the project.[1]   Quanta provided BASE2 with an estimate of subcontracting work that it proposed to perform.   Quanta's estimate reflected that approximately sixty-one percent of its subcontract work would be performed in Maryland.[2]  The Government

---

[1] BASE2 contends that Norment Security, Inc. and Quanta are subsidiaries of Compudyne, Inc.   Quanta never confirms the relationship between the two organizations, nor states that either made the initial contact with BASE2.   Quanta does not, however, dispute BASE2's contention that BASE2 did not make the initial contact.

[2] Quanta does not provide a copy of its estimate nor specify how this percentage was calculated.   In reviewing a copy of what BASE2 asserts is Quanta's original quote, the percentage
(continued...)

awarded the prime contract to BASE2, which relied in part on Quanta's estimate.  BASE2 directly subcontracted much of the work to Quanta in a purchase order dated March 17, 2002.  The parties differ as to where the contract was formed and thus which state's law would apply to the dispute.  Quanta's view is that the contract was formed in Maryland, when Quanta "accepted" the purchase order.  BASE2 contends that the purchase order was an offer, and that because Quanta's communication of acceptance of the offer back to BASE2 occurred in Virginia, the contract was formed in Virginia.  BASE2's position finds support in the documents but there is no definitive evidence on how Quanta's

---

(...continued)
apparently was computed based on the value of actual labor hours Quanta itself was to perform, although, when calculated, the percentage is approximately sixty-four percent.  BASE2 disputes how Quanta calculated this percentage, and asserts that when calculated correctly, the amount is reduced to approximately seventeen percent.  BASE2 argues that Quanta's calculation does not include, as it should, Quanta's own subcontractor costs, Quanta's cost of travel and subsistence for its personnel in Florida, Quanta's general and administrative fees, and an amount labeled "Mat/Subs/Other."  At this procedural juncture, the court must resolve all factual disputes in favor of Quanta. Moreover, Quanta's method of calculation comports with the court's analysis in *Johansson Corp. v. Bowness Constr. Co.*, 304 F.Supp.2d 701, 707 (D.Md. 2004) (examining the percent of plaintiff's hours spent on the project in the forum state in determining percentage of work performed in the state for purposes of determining whether an exercise of specific jurisdiction was proper).

acceptance was ultimately communicated.[3]   In any event, the
purchase order did not contain a choice of law provision or a
forum selection clause and BASE2 never indicated a willingness
to be governed by Maryland law.   In negotiating the terms of the
subcontract, BASE2 never traveled to Maryland.[4]   After the
subcontract was awarded, BASE2 corresponded via phone and e-mail
with Quanta personnel in Maryland regarding work on the
contract, including Quanta's progress and contract problems, but
never traveled to Maryland to discuss the project's status.
BASE2 also sent payments to Quanta's headquarters in Maryland.
Ultimately, Quanta performed sixty-nine percent of its total
work hours in Maryland.

During the performance of the contract, the Government made
significant changes to the contract work, which BASE2, as the
prime contractor, imposed on Quanta.   Quanta contends that the
parties understood that although Quanta was required to perform
the changed work, Quanta was entitled to an upward adjustment in

---

[3] The purchase order states that it was to be signed and
faxed back to BASE2, but neither party produces evidence that
Quanta took this action.

[4]   BASE2 contends and Quanta does not dispute that a
corporation related to Quanta traveled to Virginia to conduct
preliminary negotiations.

4

its contract price to compensate for its increased cost of performance and any delay costs. Although the parties anticipated a thirty-four week project when they entered into the contract, changes to the work and delays caused by the government resulted in a project that was still ongoing two years after the effective date of the purchase order. On April 19, 2004, BASE2 terminated Quanta's contract on the basis that Quanta had "reiterated claims for cost overruns" and that Quanta failed to make sufficient progress on its contractual obligations. BASE2 communicated the termination to Quanta by letter, which was sent to Maryland.

On April 22, 2005, Quanta filed suit against BASE2 for breach of contract (count I), quantum meruit (count II), unjust enrichment (count III), and breach of duty of good faith and fair dealing (count IV). Quanta contends that this court has jurisdiction pursuant to 28 U.S.C. § 1332 because Quanta and BASE2 are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Quanta asserts that venue in Maryland is proper pursuant to 28 U.S.C. § 1391 because Quanta is a resident of Maryland, and a substantial part of the events or omissions giving rise to this

action occurred in Maryland.[5]  Quanta seeks damages in an amount in excess of $500,000, plus interest, costs, and attorneys' fees.  On June 20, 2005, BASE2 filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3), alleging lack of personal jurisdiction and improper venue.[6] (Paper 4).

## I.  Standard of Review

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (*citing Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)).  If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint,

---

[5] In its opposition memorandum, Quanta also contends that venue is proper pursuant to § 1391(c), because BASE2 is a corporation that "resides" in Maryland.

[6] In its reply memorandum, BASE2 requests that the court either grant its motion to dismiss, or, in the alternative, to transfer the case to the Eastern District of Virginia.  The court will enter an Order of transfer to the Eastern District of Virginia and therefore need not consider BASE2's argument for dismissal based on improper venue.

affidavits and discovery materials, as it does here, "the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst of Md.*, 334 F.3d at 396; *see also Mylan Labs.*, 2 F.3d at 60; *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  In determining whether the plaintiff has proven a prima facie case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan,* 2 F.3d at 60; *Carefirst of Md.*, 334 F.3d at 396.

A federal district court may exercise personal jurisdiction over a non-resident defendant "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993).  Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment.  *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003); *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 212-13 (4th Cir.), *cert. denied*, 537 U.S. 822 (2002).  Thus, the inquiry for

the court is whether the defendant purposefully established "minimum contacts" with Maryland such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer,* 311 U.S. 457, 463 (1940)); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985); *Base Metal Trading, Ltd.*, 283 F.3d at 213.

The crucial issue is whether the defendant's contacts with the forum state are substantial enough that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A defendant has fair warning that it might be subject to a forum's jurisdiction if it purposefully directs its activities at forum residents and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp.,* 471 U.S. at 472 (*citing Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)). Where a nonresident defendant purposefully has engaged in significant activities within the forum state or has created "continuing obligations" with residents of the forum state, the defendant has obtained the benefits and privileges of conducting business there--and

thus, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp.*, 471 U.S. at 476.

## II. Analysis

Quanta contends that BASE2's contacts with Maryland are significant enough to establish both general and specific jurisdiction. The nature of the claim and the defendant's contacts with the forum state determine whether a court may assert specific or general personal jurisdiction. Whether general or specific jurisdiction is sought, a defendant's "contacts" with a forum state are measured at the time the claim arose. *Cape v. von Maur*, 932 F.Supp. 124, 127 (D.Md. 1996). Specific jurisdiction may exist where the claim is related to or arises out of the defendant's contacts with the state. *Helicopteros Nacionales de Colombia*, 466 U.S. at 414. Alternatively, a defendant may be subject to general jurisdiction in a suit entirely unrelated to the defendant's contacts with the forum state where the defendant maintains "continuous and systematic" contact with the state. *Id.* at 414-15. "The threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

## 1. General Jurisdiction

Quanta contends that BASE2's contacts with Maryland are sufficient to establish the requisite systematic and continuous contacts necessary for general personal jurisdiction.  First, Quanta asserts that BASE2 registered with the state of Maryland in 1993, and remained authorized to do business in the state through November 15, 2004.  Although SDAT forfeited BASE2's registration on November 15, 2004, after it failed to file a personal property return, BASE2 was registered to do business in Maryland on April 19, 2004, which is the date BASE2 terminated Quanta's contract and committed the alleged breach.  Second, Quanta contends that during the period in which BASE2 was registered, BASE2 maintained a registered agent in Maryland, had several employees working in Maryland at client sites, and filed annual personal property returns with SDAT until 2003.[7]  Finally, Quanta contends that BASE2 maintains a debtor-creditor relationship with Federal National Commercial, Inc. in Bethesda,

_____

[7] BASE2 asserts that although its registration was not formally forfeited until 2004, since 2002 it has not maintained an office or any other presence or property in the state of Maryland. (Paper 8, ex. C, affidavit of Dennis Asaka). In its opposition brief, Quanta offers evidence that BASE2 filed a personal property return in 2003.  Given the procedural posture of this case, all disputes of fact must be resolved in favor of Quanta.  For purposes of this motion, the court will presume that BASE2 maintained a registered agent and had several employees in Maryland through the time the claim arose.

Maryland, and that as part of its Small Business Association profile, BASE2 lists several Maryland companies as references.[8]

Accepting all of Quanta's assertions as true, BASE2's contacts with Maryland are still not continuous, systematic, or substantial enough to justify the exercise of general jurisdiction. In *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993), the Fourth Circuit clarified that "broad constructions of general jurisdiction should be generally disfavored." In *Nichols*, the court held that the district court could not exercise general jurisdiction even though the defendant employed thirteen Maryland residents as product representatives and maintained two district managers in Maryland to oversee the representatives, possessed company cars registered in Maryland, held district meetings three times annually and regional and national meetings twice annually in Maryland, and had between $9 million and $13 million annual sales in Maryland. *Nichols*, 991 F.2d at 1198-2000. BASE2's contacts are much more limited than those in *Nichols*. BASE2 was

─────────────

[8] In support, Quanta attached to its opposition brief, a "Uniform Commercial Code Report" listing the debt. In an affidavit attached to its reply, BASE2 disputes that it maintains a relationship with Federal National Commercial, Inc., and asserts that it has not transacted any business with that organization since 1998. As noted however, at this juncture all disputes of fact must be resolved in favor of Quanta.

registered to do business in Maryland, maintained a registered agent, and employed several individuals at client sites in Maryland.  These facts, combined with BASE2's debtor-creditor relationship and its use of Maryland businesses as references, are not sufficient to establish general jurisdiction under *Nichols*.  *See Nichols*, 991 F.2d at 1199 ("Only when the continuous corporate operation within a state is thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities may a court assert general jurisdiction over a corporate defendant.") (internal quotation marks and citation omitted).  *See also Tyler v. Gaines Motor Lines, Inc.*, 245 F.Supp.2d 730, 734 (D.Md. 2003) (stating that contacts must be both systematic and continuous as well as substantial).

## 2. Specific Jurisdiction

Quanta contends that this court has specific personal jurisdiction over BASE2, relying on a provision of Maryland's long-arm statute that confers personal jurisdiction over a corporation that "transacts any business or performs any character of work or service in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1) (2004).  In determining whether it may exercise specific jurisdiction over a particular defendant, the court must consider "(1) the extent to which the defendant

12

has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst of Md.*, 334 F.3d at 397.

An out-of-state party's contract with a party based in the forum state cannot automatically establish minimum contacts in the forum state. *See Burger King*, 471 U.S. at 478. "Instead, the court must perform an individualized and pragmatic inquiry into the surrounding facts" to determine if minimum contacts exist. *Johansson Corp. v. Bowness Constr. Co.*, 304 F.Supp.2d 701, 705 (D.Md. 2004). In performing this inquiry, courts have considered various factors including: where negotiations took place, where the parties contemplated the work to be performed, the parties' course of dealing, where payment was made, and contemplated future consequences. *Id.* "The strongest factor that seems to have emerged, however, is a determination of whether the defendant initiated the business relationship in some way." *Nueva Eng'g, Inc. v. Accurate Elecs., Inc.*, 628 F.Supp. 953, 955 (D.Md. 1986).

Several factors fall somewhat in favor of exercising personal jurisdiction over BASE2. First, both parties

13

understood that Quanta was to perform more than half of its work on the contract, from its offices in Maryland.  *See Johansson Corp.*, 304 F.Supp.2d at 706-707 (finding that where parties contemplated that a majority of work was to be performed in the forum state, it counseled in favor of exercising personal jurisdiction over the defendant).  It did not matter to BASE2, however, where Quanta performed the work and Quanta's work in Maryland was not completed under BASE2's direction.  BASE2's only expectation was that the final product was delivered to Florida.  Second, during the course of the contract BASE2 made phone calls and sent e-mails to Quanta in Maryland, to give and receive updates on the status of the project and evaluate contract problems.  *See Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044, 1046-47 (4th Cir. 1988) (stating that on-going dealings with the plaintiff by phone and through the mails, among other contacts with the forum, supported exercising personal jurisdiction over the defendant). However, during the contract period no BASE2 representative ever traveled to Maryland to discuss the status of the project or oversee Quanta's work.  Third, BASE2 mailed all payments to Quanta at its location in Maryland.  *See Mun. Mortgage & Equity, LLC v. Southfork Apartments Ltd. P'ship*, 93 F.Supp.2d 622, 626 (D.Md. 2000) (stating that place of payment is a consideration

14

in a court's analysis of whether personal jurisdiction should be exercised); *Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F.Supp.2d 617, 621 (D.Md. 1998) (finding that ongoing payment and reporting obligations to a party in Maryland, created as part of a long-term franchise agreement, contributed to a finding that an out of state party "transacted business" under Maryland's long-arm statute).

Conversely, other facts weigh more heavily against the exercise of personal jurisdiction over BASE2.  First, BASE2 did not initiate contact with Quanta in order to secure the subcontract.[9]  *Johansson Corp.*, 304 F.Supp.2d at 705.  Indeed, the only evidence is that Quanta, through a related corporation, sought out BASE2 to serve as a prime contractor on the project. Second, no contract negotiations were performed in Maryland. *See Mun. Mortgage & Equity, LLC*, 93 F.Supp.2d at 627 (noting that the lack of prior negotiations in the forum supported the court's determination that the defendant was not subject to the court's exercise of personal jurisdiction).  Third, there was no choice of law provision in the contract providing that Maryland law would apply to contract disputes, and BASE2 never consented

---

[9] As noted, Quanta does not provide any specific information regarding how the relationship began, but it does not dispute BASE2's contention that it did not make the initial contact.

to being governed by Maryland law. *See Johansson Corp.,* 304 F.Supp.2d at 707; *Choice Hotels Int'l, Inc.*, 23 F.Supp.2d at 620 (noting the significance of a choice of law contract provision in the personal jurisdiction analysis). With regard to contract performance, although a majority of Quanta's work was performed in Maryland, the performance was completed in the process of building a SIDS to be installed at Cape Canaveral, Florida. *See Johansson Corp.,* 304 F.Supp.2d at 707. Finally, when the contract was formed, a long-term, ongoing relationship was not contemplated; both parties originally understood that the project was to last thirty-four weeks. *See Johansson Corp.,* 304 F.Supp.2d at 707 (finding there were no "contemplated future consequences" where, under a subcontract, "the parties agreed to a one-time business relationship for a relatively short duration of approximately six months").

Quanta has failed to put forth a prima facie showing of personal jurisdiction given BASE2's minimal contacts with Maryland. There is no dispute that Quanta, through a related corporation, sought out BASE2 and initiated the relationship. Moreover, no BASE2 representative *ever* traveled to Maryland during either preliminary negotiations or the course of the contract, although representatives of Quanta and the related corporation traveled both to Virginia and to Florida throughout

16

the scope of the business relationship between the parties. Quanta's location was simply immaterial to BASE2; its only requirement was that Quanta's final product be delivered to the project site in Florida.  The court will therefore exercise its discretion to transfer the case pursuant to 28 U.S.C. § 1406(a). *See Porter v. Groat*, 840 F.2d 255, 257 (4th Cir. 1988) ("As we have said, § 1406(a) has been interpreted to authorize broad remedial relief where there are impediments to an adjudication on the merits, and has not been limited to instances where the only impediment is lack of venue.").

Alternatively, even if the court found Quanta had set forth a prima facie showing, it would be, at best, a close call.  The court would still exercise its discretion to transfer the case, pursuant to § 1404(a).  As the court noted in *Joseph M. Coleman & Assocs., LTD. v. Colonial Metals*, 887 F.Supp. 116, 120 (D.Md. 1995):

> The constitutional question is a close one upon which reasonable minds could differ. In [the court's] judgment, there is no reason to interject such a question into the case unnecessarily.  It would not be in the interest of any of the parties or any of the witnesses to litigate this case in Maryland, only to have a ruling upholding the assertion of jurisdiction over [the defendant] reversed on appeal.  Nor would that course further the general public interest in the sound and efficient administration of justice or effectuate the

17

> specific purposes of the Civil Justice
> Reform Act of 1990 to reduce the cost and
> delay of litigation. *See* 28 U.S.C. §§ 471
> *et seq.*

*See also Tyler v. Gaines Motor Lines, Inc.*, 245 F.Supp.2d 730, 734 (D.Md. 2003) ("Because the question is a close one, [the court] will exercise [its] discretion to transfer this case in the interests of justice.").

In its reply memorandum, BASE2 re-formulated its request as one for dismissal, or, in the alternative, for transfer to the Eastern District of Virginia. Likewise, in its opposition memorandum, Quanta requests that in lieu of dismissal the court should transfer the case to that forum.[10] Jurisdiction in the Eastern District of Virginia, where BASE2 has its principal place of business, and where BASE2 concedes the court can exercise personal jurisdiction over it, is proper. Accordingly, the undersigned will enter an Order of transfer to that court.

### III.  Quanta's Request for Discovery

In its opposition memorandum, Quanta asserts that if the court finds it has not made a prima facie showing of personal

---

[10] This case can be distinguished from *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (stating that the parties deserved an "opportunity to be heard" before the court could effectuate a *sua sponte* transfer). Here, both parties have acknowledged that transfer to the Eastern District of Virginia is an acceptable alternative resolution.

jurisdiction over BASE2, the court should permit discovery on both specific and general jurisdiction.  With regard to general jurisdiction, there is no suggestion that BASE2's declarations as to its contacts with Maryland are untrue.  Plaintiff's request is akin to a fishing expedition conducted in hopes of finding some additional contacts, and, given the high threshold that must be met to establish general jurisdiction, the court will deny Quanta's request. *See Carefirst of Md.,* 334 F.3d at 402-03 ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."); *McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir. 1983) (holding that the district court did not abuse its discretion in denying jurisdictional discovery when plaintiff "offered nothing beyond his bare allegations that the defendants had had significant contacts with the state of Maryland").  As to specific jurisdiction, Quanta states that it should be allowed discovery on "the factual issues" raised by the motion, but, as noted, there are either no factual issues or the issues have been resolved in favor of Quanta.  Discovery regarding specific jurisdiction is therefore unwarranted.

**IV.  Conclusion**

For the foregoing reasons, the Defendant's motion to dismiss is denied, but the court will enter an Order of transfer to the Eastern District of Virginia.  A separate Order will follow.


```
_____/s/_____
```
DEBORAH K. CHASANOW
United States District Judge